IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH Z. MORKOS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-CV-2037 |
| | § | |
| DNV GL USA, INC., | § | |
| | § | |
| *Defendant.* | § | |

<u>DEFENDANT DNV GL USA, INC.'S TRIAL MEMORANDUM OF LAW</u>

Defendant DNV GL USA, Inc. ("DNV") files this Trial Memorandum of Law.

## I.  INTRODUCTION

Plaintiff Joseph Z. Morkos claims in this lawsuit that DNV subjected him to unlawful discrimination because of an alleged disability[1] and interfered with his FMLA rights by terminating his employment.  To the contrary, DNV gave Morkos all the FMLA leave he requested and to which he was entitled and did not interfere with his rights under the FMLA when several months after he exhausted his FMLA leave and he had returned to work, DNV eliminated the position Morkos held as part of a company-wide business reorganization.  After Morkos returned from a second, non-FMLA medical leave, DNV did not select him for the only position for which he applied in a new organization for legitimate non-discriminatory reasons.  Specifically, DNV selected a better qualified candidate for the position Morkos sought in the restructured business after Morkos performed poorly in his interviews for the position.  Moreover, Morkos cannot present evidence of unlawful motivation in DNV's decisions.  As a result, judgment for DNV is warranted after a trial on the merits.

---

[1] This Court rendered summary judgment on a number of claims that Morkos asserted in his complaints but denied summary judgment on his claims of disability discrimination and FMLA interference.

## II.  FACTUAL BACKGROUND

A.      Morkos's employment with DNV GL USA, Inc.

DNV hired Morkos in 1997 as an accountant.  Beginning in 2012, Morkos held the position of Regional Finance Manager, Sales Division in the Americas within DNV's Software business area (BA).  By 2017, Morkos had four direct reports—Anabel Vieira, Brenda Viera, Diana Scott, and Jeana "Alex" Kloewer.  Vieira, Viera, and Scott worked with Morkos in DNV's Houston office.  Kloewer worked in Corvallis, Oregon.  In 2017, until a DNV restructured in the fourth quarter of 2017, Morkos reported to Anita Kovacs, who worked in London.

B.      Employees complain of sexual harassment by Morkos, DNV investigates, Morkos admits to harassing conduct, and Morkos receives a written warning.

In March 2017, several of Morkos's subordinates complained to Human Resources (HR) that Morkos engaged in inappropriate behavior in the workplace.  Mike McCaffrey, who was the Head of Section – Employee Relations & Compliance in DNV's Global Shared Services (GSS) at the time, and Terri Ivarsson, GSS HR Consultant Employee Relations & Compliance, promptly investigated the complaints.  McCaffrey and Ivarsson learned that Morkos told sexual jokes in the workplace and that he had hugged and kissed a female subordinate without her consent while in an elevator. When McCaffrey and Ivarsson questioned Morkos regarding these matters, Morkos admitted to the inappropriate jokes and touching, although he claimed the hugging and kiss were customary behaviors within his culture.

Morkos was aware of and understood DNV's policy against sexual harassment, including the prohibitions on sexually harassing verbal conduct such as making sexual jokes and unwelcomed physical conduct.  Due to the seriousness of this behavior under DNV's sexual harassment policy as established by McCaffrey's investigation and Morkos' own admissions, Ivarsson and Kovacs issued Morkos a written warning on March 15, 2017, which Morkos

acknowledged with his signature.  The written warning also reiterated DNV's policy against retaliation towards employees who raise concerns about potential harassment in the workplace. Morkos admits that he understood the importance of this anti-retaliation policy.

Denisa Ballard, HR Manager for the Software BA in the Americas, invited Morkos to participate in an immersion exercise led by Ballard in order to improve the working relationships in Morkos' group after the harassment investigation.  The immersion exercise took place on March 21 and 23, 2017.  The exercise involved questions and discussion points for both Morkos and his team to improve the working relationship and better understand each other's most effective communication and leadership style.  In general, Morkos appeared to have found the exercise valuable, as he emailed the team thanking them for contributing to the exercise afterward.  Ballard found him to be defensive, but not upset with the activity.

Following the immersion exercise, on or around March 29, 2017, Ballard prepared an individual development plan (IDP) to further assist Morkos in improving his leadership skills based on the concerns raised by members of his team.  The IDP specifically set out learning goals, including improving his abilities to obtain results from others, communicating clearly, delegating work effectively, and motivating and empowering his team members.   Ballard sent the recommended IDP to Morkos's supervisor (Kovacs), who sent the final IDP to Morkos.   In Kovacs's email to Morkos providing the IDP, Kovacs requested a meeting with him in late April to discuss his job expectations and the IDP.

C.     Morkos takes an extended leave of absence for his own personal medical condition.

Morkos ultimately did not meet with Kovacs in late April 2017 to discuss the IDP because he checked into a hospital for stress he suffered at work resulting from his sexual harassment of his subordinates and receiving a written warning.  Ballard initiated the leave of absence process, which was approved by the Company as an FMLA job-protected leave of absence.  The Company

agreed to extend the leave through July 16, 2017, the full length of available FMLA leave.

Due to business needs, Morkos's supervisor, Anita Kovacs, grew concerned that she would need to hire someone to replace Morkos while he was on leave and she emailed McCaffrey with Human Resources to discuss her legitimate business concerns. McCaffrey called Kovacs upon receiving her email and explained to her that Morkos was on a job-protected FMLA leave of absence. Accordingly, Kovacs did not replace Morkos during his FMLA leave of absence. In fact, though Morkos's FMLA leave was exhausted on July 16, 2017, the company generously agreed to *extend* his time off of work past the FMLA period. Morkos returned to work on July 25, 2017. Morkos admits that nobody said anything negative to him about his taking the leave.

Upon his return to work at his prior job, Morkos met with Kovacs and requested an accommodation to work shorter workdays in the office. Kovacs granted Morkos's request for an accommodation. Shortly thereafter, Morkos sent Kovacs a lengthy email rejecting the immersion exercise and IDP that Kovacs had sent him prior to his leave. In the email, Morkos said that he felt he received less support than the complaining employees despite his tenure with DNV and that he felt Ballard held a grudge against him. Of course, the complainants did not violate company policy, but that fact seemed lost on Morkos. Morkos gave no other explanation regarding the basis for the alleged unfair treatment. Kovacs forwarded Morkos's concern to her supervisor, Tore Selsø, who spoke with Morkos about his concerns. During this time, from his return in late July to the end of August, Morkos continued to work on the modified schedule he had requested.

Morkos's attitude resulting from DNV's handling of his admitted violation of the company's harassment policy continued to worsen. On or around September 18, 2017, Morkos went to DNV's parent company's offices in Norway to discuss his complaints about the investigation, IDP, and immersion exercise with Selsø, and Inger-Marie Sannerud, Director,

4

Human Resources and Organization for the Software BA.  Despite busy schedules, Selsø and Sannerud dedicated more than an hour of their time to meet with Morkos, whose complaint was essentially that he should not have been disciplined for the harassment (despite the fact that he admitted to the conduct).  Upon review and consideration, Selsø and Sannerud determined that Morkos's complaints had no factual basis and that Ballard acted in accordance with DNV's policy by investigating the employee complaints and initiating a written warning based on Morkos's admitted inappropriate conduct.

Following the meeting, Morkos told Hege Espedal, the global CFO of Software, who also officed in Norway, that he was greatly distressed that Selsø and Sannerud did not devote an entire day to hearing him out, although it is unclear what he needed to say in addition to what he was able to say in the one-hour meeting he had with them.  That evening, Morkos claimed he had a serious medical incident at the hotel where he was staying in Norway.  Morkos emailed Espedal, and told her he could not meet the next day, and that he was experiencing a bad migraine headache and a numbness sensation in his arm and leg.  Espedal reported the concern to the company safety staff in Norway, and the company sent a physician to examine Morkos at the hotel.  That physician ultimately released Morkos to return to the United States.  Following his return, Kovacs emailed Morkos to check on him.  In light of Morkos's description of his condition, Kovacs requested that he take a medical leave until he received a release to return to work.

Morkos agreed he needed a leave of absence and told Kovacs that he was glad she brought the subject up because his health condition had worsened since his meeting in Norway, and he was "glad that [he] arrived to [his] wife and children alive and not in a wooden box."  Morkos also stated that his therapist would not release him to return to work.  While management waited for his release to return to work and although Morkos had exhausted his FMLA leave in July, DNV

continued to pay Morkos his full salary and its benefits team continued to help him as he applied for short-term and long-term leave benefits.  Meanwhile, Morkos repeatedly represented that he could not return to work and DNV continued to accommodate his condition by extending his leave of absence.

D.    Management eliminates Morkos's position as part of a corporate restructuring.

In September 2017 while Morkos was on his leave of absence, DNV announced plans to create a new business area (BA) called Digital Solutions as part of an ongoing restructuring, which combined services previously provided by its Software BA with part of its internally-focused Global Shared Services (GSS) IT group.  DNV eliminated redundant Software BA and IT positions with the reorganization, including, but not limited to, Morkos's Regional Finance Manager position.  The newly developed Digital Solutions BA included a new Regional Finance Manager, Sales Division position with numerous additional responsibilities, reporting lines, and qualifications that were not part of the Software BA position Morkos formerly held.

In particular, the new Regional Finance Manager for Digital Solutions position added the critical duty of leading the strategic and operational aspects of financial planning and management for the Regional Ecosystems Development Hub and reported directly to the Director of Digital Solutions, whereas the position Morkos previously held did not include this responsibility and reporting relationship.  Additionally, the new position sought applicants with a master's degree in accounting, finance, and business administration or equivalent, whereas the eliminated Software BA Regional Finance Manager position did not.  Morkos does not have a master's degree.

Although the new Digital Solutions BA replicated many sales and operational positions from the eliminated Software BA and GSS IT BA, many regional management positions were subject to a competitive application and interview process, with exceptions made only where there were single incumbents for a function within the region.  Although DNV eliminated Morkos's

former position with the reorganization and he remained on leave, DNV generously maintained

Morkos's salary, employment, and health care benefits while he participated in the interview

process for open management positions in the new Digital Solutions organization.

E.  Morkos applies for the Regional Finance Manager position in DNV's new Digital
    Solutions Business Area, Morkos is not selected for the position, and his employment with
    DNV ends

In December 2017, Morkos reported that his general practice doctors (but not his mental

health therapist) had released him to return to work.  This release occurred shortly after the third-

party insurance administrators denied his LTD benefits application because his mental health

condition did not qualify for LTD benefits.  It appears that Morkos may have sought to return to

work not because his condition had changed but because the third-party insurance administrator

denied his claim for LTD benefits.

Because Morkos's former position no longer existed due to the reorganization, he had to

secure another position to remain employed.  Espedal sent Morkos a list of five new finance

positions in Digital Solutions and a link to apply for each.  Despite being provided a list of multiple

positions for which he could apply, Morkos applied for only one position: Digital Solutions

Regional Finance Manager, Americas.  Morkos, along with several other candidates, participated

in the competitive interview process for the Regional Finance Manager, Americas position.

Regional Manager Americas Digital Solutions Deborah Wood interviewed the candidates for the

Regional Finance Manager position along with Espedal, who would have a dotted line level of

oversight of the position, and Jennifer Franks, for human resources support.  Morkos's former

manager, Kovacs, was not on the interview panel and she had no decision-making authority with

respect to the selection of the Regional Finance Manager, Americas position in Digital Solutions.

Morkos did not perform well in his interview.  In response to questions about teamwork,

he touted his individual successes; he did not answer questions directly about how he would handle

the role; and throughout the interview complained that he had not been sufficiently recognized by the company for his tenure.  DNV did not select Morkos for the position due to his poor performance in the interview, concluding that Morkos did not meet the qualifications for the managerial position.  In fact, none of the candidates from the first round of interviews made it to the second round of consideration for the position, as they failed to meet the qualifications and expectations for the position.  None of the other candidates that DNV similarly rejected claim to have a disability.  The company then conducted a second set of interviews with a new group of candidates that included Sanjay Dutta.  DNV ultimately selected Dutta for the position.  Dutta met the requirements and qualifications for the position, had a graduate degree, and had advanced managerial experience.  Because the position Morkos previously held did not exist and DNV did not select him for the one position for which he applied in the reorganized business, Morkos's employment with DNV terminated effective February 2, 2018.

## III.  ARGUMENT AND AUTHORITIES

A.    <u>DNV did not discriminate against Morkos in violation of the ADA with respect to the elimination of his position.</u>

The ADA makes it unlawful to discriminate against any individual on the basis of disability.  42 U.S.C. § 12112(a) (ADA).  In order to make a *prima facie* case of discrimination when the employment decision at issue was the result of a reduction-in-force, a plaintiff must present evidence from which the fact finder might reasonably conclude that the employer intended to discriminate on the basis of the plaintiff's protected status in making the layoff decision.  *See*, *e.g.*, *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 832 (S.D. Tex. 2009); *Nichols, Jr. v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Thomas v. Exxon, U.S.A.*, 943 F. Supp. 751, 759 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1067 (5th Cir. 1997).  This standard differs from the typical standard, in which the plaintiff is required to show that the company replaced him with

someone outside his protected classes.  *See Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).  In the instant case, there is no evidence that DNV replaced Morkos with someone outside of his protected class, or that the company treated similarly situated employees outside his protected class more favorably.  *See Okoye*, 245 F.3d at 512-13.  The company did not replace Morkos as the company eliminated his position along with all other positions in the Software BA, as part of a company-wide business reorganization.

DNV did not conduct the full-scale reorganization of the entire Software BA and part of GSS IT BA, and create the Digital Solutions BA, just to terminate Morkos's employment.  DNV eliminated Morkos's former Regional Finance Manager position and dozens of other positions in the Software BA.  Indeed, Morkos received an email with the list of new finance manager positions at the same time as 12 other employees.  Likewise, the company treated similarly situated employees—managers in the Software BA—who were outside of his protected class the same as the company treated Morkos and gave them the opportunity to apply for and be considered for alternative positions.

Even if Morkos could establish a *prima facie* case with regard to the position elimination, which he cannot, DNV's decision to reorganize its business was based on legitimate, non-discriminatory business reasons. DNV decided to reorganize its business for legitimate business purposes and Morkos has no evidence that the company did this to target him because of his disability.  Morkos offers an email that Kovaks sent to McCaffrey about replacing him while he was on FMLA leave as evidence of unlawful intent.  One does not have to be disabled to be on FMLA leave so that cannot be supporting evidence of unlawful disability discrimination. Moreover, Kovaks sent the email several months prior to the reorganization and had no involvement in the elimination of Morkos's position.  Kovaks also had no involvement in the

selection of the Regional Finance Manager, Americas in the new Digital Solutions BA.  Thus, Kovacs's email several months before Morkos's termination does not support his claim of unlawful discrimination.  *Jones v. Louisiana Dep't of Health & Hosps.*, 471 Fed. Appx. 344, 348 (5th Cir. 2012) ("Without a showing that the speaker of such remarks was a decisionmaker or had influence over a decisionmaker, a plaintiff cannot show discrimination.").

Morkos cannot demonstrate that eliminating the entire Software BA is false or a pretext for discrimination and his subjective beliefs and speculation are insufficient to rebut DNV's legitimate business reason for its actions.  *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) ("[w]e cannot allow subjective belief to be the basis for judicial relief when an adequate nondiscriminatory reason for the discharge has been presented"); *Elliott v. Group Medical Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983) ("generalized testimony by an employee regarding his subjective belief that his discharge was the result of . . . discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge"), cert. denied, 467 U.S. 1215 (1984).  Morkos simply cannot present any evidence that's stated reason for the elimination of the entire Software BA, including the position he held, was pretextual.

B.    DNV did not unlawfully discriminate against Morkos when it did not select him for the new Regional Finance Manager, Americas position in the Digital Solutions BA.

Morkos alleges that the company did not select him for the Regional Finance Manager, Americas position in the new Digital Solutions BA, which resulted in the termination of his employment, because of a disability.  Just as Morkos cannot establish a *prima facie* case of discrimination with regard to the elimination of his position, he cannot do so for this failure-to-hire claim he asserts.  Moreover, even if Morkos could present a *prima facie* case, which he cannot, DNV decided not to select him for the Regional Finance Manager, Americas for the Digital

Solutions BA for legitimate nondiscriminatory business reasons.

To establish a *prima facie* case of disability discrimination, Morkos must show (1) he was not selected, (2) he was qualified for the position he sought, (3) he was in a protected class, and (4) DNV either selected someone outside that protected class or otherwise failed to select Morkos because of his membership in a protected class. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). In addition, comments are evidence of discrimination only if they are "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). Comments that do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment. *Id.*

If Morkos can establish a *prima facie* case, the burden shifts to DNV to articulate a legitimate, non-discriminatory reason for not selecting him. *Id.* Finally, if both burdens are met, the burden shifts back to Morkos to demonstrate that DNV's non-discriminatory reason is actually a mere pretext for discrimination.

The new Regional Finance Manager, Americas position in the Digital Solutions BA had a greater scope of authority than the position Morkos held previously. For example, the new position reported directly to the Director of Digital Solutions, Region Americas and was responsible for the strategic and operational aspects of financial planning and management for the Regional Ecosystems Development Hub, whereas the position Morkos previously held did not.

Not only was Morkos not qualified for this high-level position that called for a higher degree of leadership than the position he previously held, but Morkos presents no evidence that

DNV was motivated by any unlawful reason when it decided to hire Sanjay Dutta for the Regional Finance Manager, Americas position in the Digital Solutions BA.  When asked why he thought he was not selected for the position, Morkos did not provide a reason; instead, he answered "I can say that I didn't see a reason why I had to not be selected."  When asked about if he knew of anyone else with a disability in relation to his claim he lost his job, Morkos responded "I don't recall. I don't think so."  Morkos has not, nor can he, present any competent evidence that DNV's decision to not select him for the new position was based on any improper motive.

The general rule in the Fifth Circuit is that differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.  *Deines v. Tex. Dep't of Protective & Regulatory Services*, 164 F.3d 277, 279 (5th Cir. 1999).  Because the selected individual in this case was demonstrably better qualified and because Morkos cannot present competent evidence that DNV did not select him because of any unlawful reason, Morkos's claim based on his non-selection for the Regional Finance Manager, Americas position in the Digital Solutions BA also fails.

Furthermore, Morkos cannot demonstrate that DNV's legitimate, non-discriminatory reason is a mere pretext for discrimination.  To establish pretext, Morkos would need to show that he had "superior qualifications" to the selected candidate.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (the losing candidate's qualifications must "cry out to all who would listen that he was vastly—or even clearly---more qualified for the subject job.").  The selected candidate, Dutta, had an advanced degree and advanced managerial experience, which Morkos lacked, and Dutta had many years of experience working on financial matters at DNV.  Comparing

Morkos's resume and Dutta's resume, Morkos's experience and qualifications are not superior to Dutta's. Moreover, the position required "excellent interpersonal and communication skills," skills, which Morkos lacked as evidenced by his interview performance, and underscored by the immersion exercise, IDP, and the fact that he admittedly engaged in conduct toward his subordinate employees that violated the company's anti-harassment policy.

Morkos has no evidence to support his allegation that DNV did not select him for the new Regional Finance Manager, Americas position in Digital Solutions because of any alleged or perceived disability, or any other unlawful reason. Further, Morkos has failed to establish that DNV's stated reason for not selecting him is false or a pretext for discrimination. Morkos's objection to his not being selected, without more, is insufficient to meet his burden to show pretext. *See Sumrall v. The Boeing Co.*, No. Civ. A. 103CV905WJGJMR, 2005 WL 1523378, *8 (S.D. Miss. June 28, 2005) ("Although an employee may disagree with an employer's decisions, the Court is not in the position to 'second guess' those decisions without evidence that an individual's [protected characteristic] was a determining factor in the end result.").

C.   <u>DNV would have taken the same actions regardless of Morkos's protected status.</u>

Even if Morkos is able to sustain his ultimate burden of proving intentional discrimination by DNV (which he cannot do), DNV still cannot be held liable to Morkos because the evidence will demonstrate that DNV would have made the same decision regardless of any improper motive. The ADA provides an affirmative defense for mixed motive cases. *See Crouch v. J C Penney Corp.,* 337 F. App'x. 399, 402 (5th Cir. 2009) (per curiam); *see also Leach v. Mansfield,* No. H-07-4331, 2010 WL 707382, at *5 (S.D. Tex. Feb. 24, 2010). Under the ADA, if the plaintiff is able to demonstrate that the employer made an adverse employment decision "because of" the plaintiff's disability, the employer may establish that it would have terminated the plaintiff in the absence of that unlawful motive. *Id.* Under this standard, if DNV can prove that a "legitimate

reason standing alone would have produced the same decision," Morkos cannot succeed on his discrimination claims. *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000). The evidence here will demonstrate that DNV would have made the same employment decisions related to Morkos in spite of any alleged consideration of disability. The decision-makers focused on the qualifications of the candidates for the position that Morkos sought and Dutta had the clearly better qualifications. Morkos also failed to apply for any other positions so the termination of his employment was no one's fault but his own. As a result, there is insufficient evidence to support a jury verdict in favor of Morkos.

D.     **DNV Did Not Interfere with Morkos's FMLA Rights.**

To make out a *prima facie* case for FMLA interference, a plaintiff must establish that (1) he was entitled to FMLA leave, (2) some adverse action by the employer interfered with his right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Jones v. Denver Public Sch.*, 427 F.3d 1315, 1318-19 (10th Cir. 2005). Companies are obligated under the FMLA to designate a qualified leave of absence as FMLA leave when an employee is unable to work because of a serious health condition. 29 C.F.R. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA"); U.S. Dep't of Lab., Wage & Hour Div., Opinion Letter FLSA2019-1-A (explaining that employers *cannot* delay designating leave as FMLA leave, where it otherwise qualifies, even if an employee asks).

Additionally, "[f]ollowing a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Unlike the right to commence leave, an employer can deny the right to reinstatement in certain circumstances. An employee has no greater right to reinstatement or to other benefits and conditions of employment

than if the employee had been continuously employed during the FMLA leave period.  Courts have specifically held that an employee on FMLA leave may be lawfully terminated during a RIF.  *See, e.g., O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000) ("We hold that when an 'eligible employee' who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave.") (citing 29 C.F.R. § 825.216(a) (1999); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1157 (7th Cir. 1997) (holding an employer may terminate an employee on FMLA leave as part of a RIF)).

DNV gave Morkos all the FMLA leave to which he was entitled.  On April 14, 2017, Morkos applied for FMLA leave, submitted documentation supporting the FMLA leave, and DNV designated this leave as FMLA leave.  Morkos exhausted his FMLA leave entitlement on July 16, 2017, then DNV granted Morkos additional non-FMLA leave *at his request.*  Following the extended leave, DNV reinstated Morkos to his former position.  DNV did not interfere with Morkos's rights under the FMLA when several months after he exhausted his FMLA leave and he had returned to work, DNV eliminated the position Morkos held and many other positions as part of a company-wide business reorganization.  *Bryant v. Tex. Dep't of Aging & Disability Services*, 781 F.3d 764, 770 (5th Cir. 2015) (post-leave reassignment six weeks after return from leave did not interfere with, restrain, or deny plaintiff's exercise or attempt to exercise FMLA rights).  Morkos's position did not exist at that time, so DNV could not return him to his position.  Moreover, the second leave was not designated as FMLA leave (because he had already used his yearly entitlement to FMLA leave in July), which precluded any obligation to return him to any position.  Thus, Morkos cannot succeed on his interference claim at trial.

## IV.  DAMAGES AND REINSTATEMENT

In the unlikely event that Morkos establishes liability, he bears the burden of proving his

damages. Morkos is seeking back pay, reinstatement, front pay, compensatory damages, punitive or exemplary damages, and attorneys' fees and costs.  *See* Dkts. 14, 59.

      A.    <u>Morkos's claim for back pay is limited.</u>

The purpose of back pay is to place the plaintiff in the same financial position he would have otherwise occupied but for the employer's unlawful conduct.  *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002).  Back pay, however, is not an automatic or mandatory remedy in employment discrimination cases.  *Albemarle Paper Co. v. Moody*, 95 S. Ct. 2362, 2370 (1975); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 n.10 (5th Cir. 1996); *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 631 (5th Cir. 1983).  As such, a plaintiff may not recover for harm caused by events other than the employer's conduct.  The proper measure of back pay consists of the wages and employee benefits the plaintiff would have received from the last date of his employment with the employer until the date of trial.  *See Pearce*, 966 F.2d at 959.

Any back pay award must take into account the fact that Morkos has a duty to mitigate his damages.  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 392 (5th Cir. 2003).  The "mitigation of damages" doctrine requires an injured party to exercise reasonable care to minimize his damages.  *See Patterson*, 90 F.3d at 935-936.  Furthermore, DNV is entitled to an offset of any back pay award for any compensation that was earned (interim earnings and unemployment compensation) or should have been earned by Morkos.  Amounts that Morkos could have earned with "reasonable diligence" or by making a "reasonable and good faith effort" must offset back pay relief and back pay ends when the plaintiff obtains work comparable in salary to his prior job. *See Patterson*, 90 F.3d at 937.

Morkos is currently employed.  Thus, to the extent Morkos is entitled to back pay, if any, it should be limited by any failure on his part to mitigate his damages and by amounts earned from subsequent employment.

B.     Morkos should not be reinstated or awarded front pay.

Reinstatement is the remedy of choice in successful employment discrimination cases. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (discussing reinstatement as preferable to paying front pay in the context of an ADA case).  "Although reinstatement is the preferred equitable remedy for a discriminatory discharge, this court has held that front pay--money awarded for future lost compensation--is appropriate when reinstatement is not feasible." *Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002).

Here, reinstatement is not appropriate because the position Morkos held before his termination no longer exists, and there is no comparable position to Morkos' pre-termination position to reinstate him.  *Palasota v. Haggar Clothing Co.,* 499 F.3d 474, 489 (5th Cir. 2007), order clarified (Sept. 27, 2007) (finding that reinstatement was not appropriate where there was no position comparable to employee's former position to which he could be reinstated); *Webster v. Bd. of Supervisors of Univ. of Louisiana Sys*., No. CIV.A. 13-6613, 2015 WL 4459211, at *7 (E.D. La. July 21, 2015) (finding that reinstatement was not available because no comparable position exists to which plaintiff could be reinstated); *Newcomb v. Corinth Sch. Dist., No*. 1:12-CV-00204-SA-DAS, 2015 WL 1505839, at *17 (N.D. Miss. Mar. 31, 2015) (finding that reinstatement is not appropriate because the position held by the employee before their termination no longer existed). Further, the only position he applied for, Regional Finance Manager, has been filled by a better qualified candidate.  *Palasota v. Haggar Clothing Co.* at 489 (finding that reinstatement is not appropriate where it would require termination of another employee or a decrease in current employees' territory and salary). Thus, reinstatement is unavailable.

In addition, after-acquired evidence obtained during Morkos' deposition provides DNV with further cause to terminate Morkos' employment.  At his deposition, Morkos stated that he planned to retaliate against the employees who brought complaints of sexual harassment against

him.  DNV has a policy against retaliation towards employees who raise concerns about potential harassment in the workplace.  This policy was reiterated to Morkos in the written warning he signed on March 15, 2017.  Violation of the anti-retaliation policy provides DNV a legitimate non-discriminatory business reason to terminate Morkos's employment rendering reinstatement and front pay inappropriate.  *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995) (finding that after-acquired evidence will generally render reinstatement and front pay inappropriate).  In the alternative and at minimum, front pay should be considered in lieu of reinstatement.  *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 337 (5th Cir. 2019).

An award of front pay, if any, should be limited.  The Court calculates front pay through "intelligent guesswork" whereby the Court estimates the value of the prospective lost earnings that will likely accrue between the date of judgment and the time when the victim can assume a new position.  *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir. 1986).  Awards of front pay, however, are not mandatory, and may be precluded.  *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988).  The Court may consider the amount of back pay awarded when calculating front pay.  *See Deloach v. Delchamps*, Inc., 897 F.2d 815, 822-823 (5th Cir. 1990).  Because of the speculative nature of front pay, the amount awarded must be supported by "substantial evidence."  *See Burns v. Tex. City Refining, Inc.*, 890 F.2d 747, 753 (5th Cir. 1989).  Courts are generally reluctant to award front pay for more than two years from the date of discharge.  *Johnson v. El Paso Pathology Group, P.A.*, 868 F. Supp. 852, 864 (W.D. Tex. 1994).

Like back pay, a plaintiff is required to mitigate front pay damages.  *Reneau*, 945 F.2d at 870.  Even if this Court awards Morkos front pay, it is subject to critical limitations.  Front pay is proper only to provide Morkos whatever employment opportunities he would have had if the

18

alleged discrimination had not occurred.  Because Morkos has found alternative employment, DNV is entitled to a reduction in the amount of front pay, if any is awarded, where Morkos has received post-termination payments that he otherwise would not have received.

C.      Compensatory damages are limited.

To recover compensatory damages, Morkos must prove that he sustained non-economic injuries, such as emotional distress, pain and suffering, harm to reputation or other consequential injuries, in order to qualify for such an award.  Morkos must also prove that such damages resulted from DNV's conduct.  *Hamilton v. Rogers*, 791 F.2d 439, 444-445 (5th Cir. 1986), abrogated on other grounds, 913 F.2d 226 (5th Cir. 1990).  Morkos may not recover speculative or remote damages.  *Hiller v. Manufs. Prod. Research Group of North Am.*, 59 F.3d 1514, 1518 (5th Cir. 1995).  Although compensatory damages are available under the ADA, the FMLA does not permit recovery for emotional distress.  *Brumbalough v. Camelot Care Centers, Inc.,* 427 F.3d 996, 1007 (6th Cir. 2005); 29 U.S.C. § 2617(a)(1).

Morkos must present evidence to support an award of compensatory damages.  *Patterson*, 90 F.3d at 938; *Prunty*, 16 F.3d 649, 652.  Morkos must show a specific, discernable injury to his emotional state in order to recover compensatory damages for any alleged emotional distress.  *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998).  Additionally, Morkos must present competent medical or psychological evidence to support a request for compensatory damages premised on mental anguish or emotional pain.  *Patterson*, 90 F.3d at 938-39.  "Emotional harm will not be presumed simply because the complaining party is a victim of [unlawful conduct]."  *Patterson*, 90 F.3d at 939 (quoting EEOC POLICY GUIDANCE No. 915.002 § II(A)(2), at 10 (July 14, 1992)).  The Fifth Circuit, like most federal appellate courts, will vacate an award of damages for emotional distress where the award is supported solely by the plaintiff's testimony.  *Patterson*, 90 F.3d at 938-40 (vacating district court's award for mental anguish based solely on

plaintiff's testimony that she felt "frustrated," "hurt," "angry," and "paranoid" about "unbearable" work environment that was "tearing [plaintiff's] self-esteem down").

Here, the evidence shows that any emotional distress Morkos suffers is due to a preexisting condition and was not caused by the termination of his employment or any other actions by DNV. *See Brady*, 145 F.3d at 719 (there must be a specific discernible injury to the plaintiff's emotional state, proven with evidence regarding the nature and extent of the harm).   Moreover, the distress about which Morkos complains appears mostly to be related to the investigation into the sexual harassment claim made against him during his employment, not resulting from DNV's decision not to place him in the Regional Finance Manager, Americas position and his termination of employment. Morkos does not have a claim of discrimination in the investigation and subsequent discipline, nor can he, as he has admitted the conduct.   His leave due to the stress caused by his own actions during employment also could not be the basis for an award of compensatory damages against DNV because DNV did not cause that emotional distress.   Accordingly, Morkos's claim for compensatory damages is unwarranted.

D.   Morkos cannot recover punitive damages.

Punitive damages are not available under the FMLA. 29 U.S.C. § 2617(a); *see also e.g.*, *Farrell v. Tri-County Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008).

A party who establishes a cause of action under the ADA may, however, be entitled to punitive damages under limited circumstances.   *See Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 710 (5th Cir. 1997); *Patterson*, 90 F.3d at 941.   A plaintiff is not entitled to punitive damages merely because he proves that the defendant-employer is liable for discrimination. Instead, the plaintiff has the heavy burden of proving that the defendant acted with "malice or with reckless indifference" to the plaintiff's federally protected rights.   *See* 42 U.S.C. § 1981a; *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803,

809-810 (5th Cir. 1991).  The availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. at 535 (1999).  The employer "must at least discriminate in the face of a perceived risk that its actions will violate" the law.  *Id*. at 536, 119 S. Ct. at 2125.

Assuming arguendo that Morkos can meet this high standard of proof, which he cannot, punitive damages cannot be awarded if DNV establishes its good faith defense.  Employers who make "good faith" efforts to comply with federal anti-discrimination laws cannot be held vicariously liable for punitive damages for the discriminatory decisions of their agents.  The Supreme Court has held that this "good faith" standard is met where the employer adopted anti-discrimination policies and educated its employees on those policies.  *See Kolstad*, 527 U.S at 544.

Here, Morkos will not be entitled to an award of punitive damages because there will be no evidence that DNV acted with malice or reckless indifference to his federal or state protected rights.  On the contrary, DNV was more than fair in its treatment of Morkos.  Furthermore, the evidence will show that DNV made good faith efforts to comply with the law by promulgating policies prohibiting unlawful discrimination, about which policies the Company regularly educated its employees.  Therefore, Morkos's claim for punitive damages will be foreclosed as a matter of law.

Finally, compensatory and punitive damages are capped under the applicable statutes. To the extent that the jury would award punitive damages, the maximum that can be awarded would be $300,000.  42 U.S.C. § 1981a(B)(3)(d).

E.     Liquidated Damages are Not Warranted in this Case.

Liquidated damages, if any, are only available to a Plaintiff if they expressly state they seek liquidated damages in their pleading and prevail on their FMLA interference claim.  Liquidated damages, if awarded, generally equal the amount of compensatory damages and interest. 29 U.S.C.

§ 2617(a)(1)(A)(iii). The decision to grant or deny liquidated damages "is left to the court." *Pagan –Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 12 (1st Cir. 2012); *Carroll v. Sanderson Farms, Inc.*, 2014 U.S. LEXIS 16890 (S.D. Tex. 2014)(explaining that while a jury determines liability under the FMLA, the court determines good faith and reasonableness for purposes of liquidated damages); *Hall v. Meadwestwaco Corp.*, No. 03-30310-KPN, 2005 WL 1205554, at *3 (D. Mass 2005) ("[the] FMLA grants the court the power to make the requisite determinations of good faith and reasonableness and, if the employer carries its burden of proof on these obligations, the discretion to deny liquidated damages.  Accordingly, the mere fact that liability has been established by a jury does not bar the court from exercising its statutory role with respect to liquidated damages.")

Thus, Courts also have discretion to reduce the amount of these damages if the employer establishes that it acted in good faith and had reasonable grounds for believing their conduct did not violate the FMLA. *Firth v. Don McGill of W. Houston, Ltd.*, No. H-04-0659, 2006 U.S. Dist. LEXIS 18807 (S.D. Tex. Mar. 28, 2006).  To establish good faith, an employer can demonstrate that it took "active steps to ascertain the dictates" of the FMLA and attempted to comply with the statute. *Id.* Thus, there is a subjective component (i.e. the employer had an "honest intention to ascertain" the requirements of the FMLA), and an objective component (i.e. the employer had reasonable grounds for believing its conduct comported with the FMLA).  *Id.*

In this case, Morkos has not sought liquidated damages, and even if he had, DNV will introduce evidence that satisfies both components required to show good faith – (1) The company actively followed the legal requirements of the FMLA, and (2) based on the information available, they reasonably believed their actions comported with the FMLA.  For these reasons, liquidated damages should not be awarded to Morkos.

F.      Morkos may receive only reasonable costs and attorneys' fees.

In the unlikely event that the Court determines that DNV discriminated against Morkos in violation of the ADA or FMLA, Morkos may be entitled to recover costs and attorneys' fees. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).   Reasonable attorneys' fees are calculated pursuant to the lodestar method by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.   *Id.* at 546; *Watkins v. Input/Output, Inc.,* 531 F. Supp. 2d 777, 781 (S.D. Tex. 2007).  Here, Morkos stated in his deposition that he is paying his attorney on an hourly basis and not on a contingency basis.  As such, Morkos' attorneys' fees should be readily calculable.  Further, because Morkos is paying his attorney on an hourly basis, fee enhancements are not appropriate.  Fee enhancements should only be awarded in the most extraordinary of circumstances.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. at 546.  These extraordinary circumstances do not exist here.

If warranted, the parties will submit their attorneys' fees as part of the taxation of costs. Additionally, because the computation of these amounts depends on Morkos's success at trial and because he will bear the burden to prove costs and attorneys' fees, DNV requests that the parties be permitted to file additional briefing addressing this issue after the conclusion of the trial.

## V. CONCLUSION

For the foregoing reasons, Defendant DNV GL USA, Inc. did not unlawfully discriminate against Plaintiff Joseph Z. Morkos by not placing him in the Regional Finance Manager, Americas position and terminating his employment.  DNV is entitled to judgment.

Dated: March 22, 2022

*Of counsel:*

Kelcy L. Palmer
State Bar No. 24088099
Federal I.D. No. 2524981
kpalmer@littler.com
1301 McKinney Street, Suite 1900
Houston, Texas  77010
713.951.9400 (telephone)
713.951.9212 (fax)

Respectfully submitted,

*/s/ Kerry E. Notestine*
Kerry E. Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal I.D. No. 2423
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
knotestine@littler.com

ATTORNEYS FOR DEFENDANT
DNV GL USA, INC.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent to all counsel of record via the Court's CM/ECF electronic filing system on this 22nd day of March, 2022.

David T. Lopez
David T. Lopez & Associates
3900 Montrose Boulevard
Houston, Texas 77006-4959
713.523.3900 (Telephone)
713.523.3908 (Telecopier)
dtlopez@lopezlawfirm.com

ATTORNEY FOR PLAINTIFF

*/s/ Kelcy L. Palmer*
Kelcy L. Palmer

4888-5995-8541.4 / 064072-1051